IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NORTH DAKOTA
NORTHWESTERN DIVISION

| | |
|---|---|
| Cheryl J. Anderson, f/n/a Cheryl J. McCormick a/k/a C.J. McCormick, as beneficiary under the C.J. McCormick Trust a/k/a C.J. McCormick Trust,<br><br>            Plaintiff,<br><br>vs.<br><br>Gary P. Sullivan and Nancy Sullivan,<br><br>            Defendants. | **ORDER DENYING MOTION TO COMPEL**<br><br><br><br>Case No. 4:04-cv-052 |

Before the court is the plaintiff's Motion to Compel Discovery. For the reasons set forth below, the motion is **DENIED**.

**I.  BACKGROUND**

The above-entitled action arises out of the Defendant Gary P. Sullivan's ("Sullivan") alleged malfeasance/mismanagement of the C.J. McCormick Trust. Sullivan was the co-trustee of the C.J. McCormick Trust as well as the trustee of the Ruth Garcia Trust at all times material to this action.

On March 31, 2006, the plaintiff, Cheryl Anderson ("Anderson"), filed a Motion to Compel Discovery. Therein she requested that Sullivan:

> 1. [Provide] such bookkeeping records equivalent to any year end or any general ledger, balance sheet or other financial report for the Ruth Garcia Trust covering any period from January 1, 1991, through January 1, 2004, showing any loans receivable by the Ruth Garcia Trust for loans made by or authorized by Gary P. Sullivan, in his capacity as Trustee for the Ruth Garcia Trust, to himself, to any third person not a beneficiary of the Trust or to any business entity.
>
> 2. [Supplement] Defendant Gary P. Sullivan's Answers to Plaintiff's Interrogatories and Deposition question(s), wherein Defendant Gary P. Sullivan has heretofore refused to fully and completely disclose to whom, when and in what amount he made loans or transfers out of the Ruth Garcia Trust, which Trust Gary P. Sullivan was also

1

administering as signatory Trustee for all Trust bank accounts in similar fashion as concerns Gary P. Sullivan's administering the C.J. McCormick Trust.

Plaintiff's Motion to Compel Discovery.

As the basis for her motion, Sullivan cited the following admissions made by Sullivan in the discovery materials she has thus far obtained. Sullivan distributed funds from the C.J. McCormick Trust to his wife for use in her business,[1] to Joseph Whalen, his stepson, for the purchase of a trailer, and to Mr. Herrara, a member of Ruth Garcia's family, for the purchase of a car.[2] In addition, he deposited at least $100,000 of C.J. McCormick Trust funds for use in Dakota Internet Access ("DIA"), a personal business venture,[3] and appropriated approximately $56,000 from the C.J. McCormick Trust for a down payment on a condominium that he and his wife purchased in Jensen Beach, Florida.[4] He later used $25,000 in proceeds from the sale of DIA to pay the balance of an outstanding loan that the Ruth Garcia Trust had made to his nephew.[5] As justification for authorizing distributions from the C.J. McCormick

---

[1] Sullivan attested: "In June, 1997, I authorized a loan for $5,000 from the [C.J. McCormick] Trust to Carvin Copies, a small business operated by my wife Nancy. The terms of the loan called for repayment in 3 months at a rate of interest of 10%. The loan was repaid in full, including 10% interest, on September 18, 1997. I made another loan in 1998 to Carvin' Copies and again the loan was repaid in interest." Plaintiff's Motion to Compel Discovery, Ex. B (Affidavit of Gary P. Sullivan in Opposition to Plaintiff's Motion to Amend at ¶ 6).

[2] Sullivan has acknowledged that he authorized the loan to Herrara. See Defendant's Brief in Opposition to Plaintiff's Motion to Compel Discovery, p. 7. However, he maintains that Herrara was Anderson's friend and not a member of the Ruth Garcia family. See id. He also avers that this loan was repaid in full.

[3] According to Sullivan, he "deposited $100,000 of Trust funds owned by the C.J. McCormick Trust into a general bank account of DIA in furtherance of a promise to [Anderson] that [he] would do [his] best to protect her assets until such time as an 'offer of compromise' could be made to the IRS." Plaintiff's Motion to Compel Discovery, Ex. B (Affidavit of Gary P. Sullivan in Opposition to Plaintiff's Motion to Amend at ¶ 7). He added that "all monies were replaced and all of [his] actions were approved and requested of [him] by [Anderson]." Id.

[4] In his brief in opposition to the Anderson's motion, Sullivan acknowledged that he deposited $100,000 of trust funds in DIA and wire transferred $56,000 in funds to Florida. See Defendant's Brief in Opposition to Plaintiff's Motion to Compel Discovery, p. 7. However, he maintained that these sums were repaid and that Anderson was provided an accounting. Id.

[5] In his affidavit in opposition to Sullivan's Motion to Amend dated September 13, 2005, Sullivan attested that DIA was sold to Northwest Communications Cooperative in August 2001and that the proceeds of DIA's sale were initially deposited American State Bank in Williston. Plaintiff's Motion to Compel Discovery, Ex. B (Affidavit of Gary P. Sullivan in Opposition to Plaintiff's Motion to Amend at ¶ 7). In a subsequent response to Anderson's supplemental

Trust to his family and his personal business ventures, he alluded to a general understanding he had reached with Anderson in 1991 "to commingle funds in order to make difficult any tax levy and collection efforts by the IRS."[6]  Plaintiff's Motion to Compel Discovery, Docket No. 72.

Although Anderson acknowledges that the C.J. McCormick Trust is separate from and shares no beneficiaries with the Ruth Garcia Trust, she asserts that the Ruth Garcia Trusts's bookkeeping records are relevant to this action to the extent they are demonstrative of Sullivan's customary management practices.  In other words, she asserts that these records are relevant in that they will allow her to ascertain whether Sullivan had a habit or custom of making personal loans or distributions to himself or third parties out of the trusts that he administered.

On April 12, 2006, Sullivan filed a response in opposition to Anderson's motion.  Therein he asserted that he has already disclosed information reasonably calculated to lead to the discovery of admissible evidence and had answered all of Anderson's demands regarding the Ruth Garcia Trust.  As examples, he cited his responses to Anderson's eighteenth request for production[7] and nineteen interrogatory.[8]  He also stressed that Anderson had neither subpoenaed the Ruth Garcia Trust's

---

discovery requests, Sullivan acknowledged that he withdrew $25,000 from American State Bank Account No. 701-785-8 "to repay the remaining balance of a $55,000 loan from the Ruth Garcia Trust made to Shawn Sullivan in the early 1990's."  Plaintiff's Motion to Compel Discovery, Ex. B (Defendant's Answers to Plaintiff's Final Set of Interrogatories and Production Requests to Defendants, Answer to Interrogatory No. 19); see also Defendant's Brief in Opposition to Plaintiff's Motion to Compel Discovery, Ex. 1 (Transcript of Sullivan's Deposition, at 123-25).

[6]  The court has not considered the issue of whether the trust in this case has some valid purpose other than avoiding federal tax liens or whether the persons involved in creating the trust believed the trust was something more than "sham" transaction.  Nor, does it appear it will be asked to decided these issues.

[7]  In her Request for Production No. 18, Anderson asked that Sullivan "produce a copy of any and all loan papers, mortgages, notes for payment of any money amount, security agreement amortization document(s) pertaining to any or other money obligation you, Nancy Sullivan, Dakota Internet Access or Micronet owed to the Ruth Garcia Trust."  Plaintiff's Motion to Compel Discovery, Ex. B (Defendants' Answers to Plaintiff's Final Set of Interrogatories and Production Requests to Defendants).  Sullivan's response was "N/A."  Id.

[8]  Interrogatory No. 19 asked the following of Sullivan:

For your Money Market Account No. 701-785-8 with American State Bank & Trust Co. Of Williston,

bookkeeping records nor requested their production prior to filing the motion now before the court. In any event, he asserted that the records are irrelevant to any facts in dispute and that Anderson had failed to make the requisite showing of good cause sufficient to justify their disclosure.

## II.     DISCUSSION

### A.     Scope of Discovery

Rule 26(b) of the Federal Rules of Civil Procedure defines the scope of discovery as follows:

> Parties may obtain discovery regarding any matter, not privileged, that is relevant to the claim or defense of any party, including the existence, description, nature, custody, condition, and location of any books, documents, or other tangible things and the identity and location of persons having knowledge of any discoverable matter.

Fed. R. Civ.P. 26(b)(1). For good cause, the court may order discovery of any matter relevant to the subject matter involved in the action. Id. Relevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence. Id. Discovery methods otherwise permitted may be limited by the court if

> it determines that: (i) the discovery sought is unreasonably cumulative or duplicative, or is obtainable from some other source that is more convenient, less burdensome, or less expensive; (ii) the party seeking discovery has had ample opportunity by discovery in the action to obtain the information sought; or (iii) the burden or expense of the proposed discovery outweighs its likely benefit, taking into account the needs of the case, the amount in controversy, the parties' resources, the importance of the issues at stake in the litigation, and the importance of the proposed discovery in resolving the issues.

---

> North Dakota, there is an entry for Check No. 1004 payable to the Ruth Garcia Trust in the sum of $25,000.  Please state in detail, and not in summary fashion:
>
>> a.     The purpose and intent of this payment;
>>
>> b.     If the above-referenced payment was, in whole or in part, for a loan from the Ruth Garcia Trust, please state the date such loan was made, your use of such loan proceeds and the total amount of such loan.

Plaintiff's Motion to Compel Discovery, Ex. B (Defendant's Answers to Plaintiff's Final Set of Interrogatories.  Sullivan responded that "the purpose of the check was to repay the remaining balance of a $55,000 loan from the Ruth Garcia Trust made to Shawn Sullivan in the early 1990's.  Shawn Sullivan had filed for bankruptcy." Id.

4

Fed. R. Civ. P. 26(b)(2).

**B.     Analysis**

Anderson believes that the Ruth Garcia Trust's bookkeeping records are relevant and admissible under Rules 401 and 406 of the Federal Rules of Evidence to the extent that they (1) may be demonstrative of Sullivan's habitual self dealing and (2) will rebut Sullivan's statements concerning the "general understanding" he reached with her in 1991.  She maintains that she only filed her Motion to Compel Discovery after reaching an impasse with opposing counsel on this issue.  She adds that Sullivan, upon advice of counsel, refused to answer questions during his deposition about loans he had made to third parties using Ruth Garcia Trust funds.

Sullivan essentially acknowledges making the disbursements to which Anderson takes exception. Nevertheless, he counters that the Anderson's motion is inappropriate, does not relate to matters relevant to the subject matter involved in this action, and should be denied on account of her failure to make a proper request for the production of bookkeeping records prior to involving the court.  He adds that he is entitled to an award of his costs and attorney's fees under Rule 37(a)(4)(B) of the Federal Rules of Civil Procedure.  He takes particular exception to Anderson's suggestion he refused to answer questions regarding the Ruth Garcia Trust at his deposition, averring that he answered all of Anderson's questions concerning the Ruth Garcia Trust save one–a question pertaining to a loan made by the Ruth Garcia Trust to the C.J. McCormick Trust for the purchase of a home–on the grounds that his discussions with the Garcias were confidential.[9]

---

[9] Anderson and her husband purchased Sullivan's home in 2002.  See Plaintiff's Motion to Compel Discovery, Ex. B (Affidavit of Gary P. Sullivan in Opposition to Plaintiff's Motion to Amend, ¶ 5).  To facilitate the sale, Sullivan apparently provided them with a private mortgage loan through the Ruth Garcia Trust.  Id.  At his deposition, Sullivan would not discuss whether beneficiaries of the Ruth Garcia Trust has cleared this loan on the grounds that such discussions were confidential.  See Brief in Opposition to Plaintiff's Motion to Compel Discovery, Ex. 1.

To support their respective positions, the parties submitted a partial list of Anderson's interrogatories and production requests along with excerpts from Sullivan's deposition transcript.

A condition precedent to making a motion to compel is having made an initial request for the information that is the subject of the motion. In this case, it does not appear that the plaintiff made a request that covers the first part of his motion, which, essentially, is a demand for all the financial records of the Ruth Garcia Trust for a specified period of time. Consequently, the motion to compel the production of this information is denied for this reason. However, the court will also address the broader issue of whether the material is discoverable since, as the defendants point out, some or all of the information may still be the subject of a trial subpoena.

The second part of plaintiff's motion is to compel answers to deposition questions and certain written discovery requests. However, plaintiff has failed to identify the specific discovery requests to which he objects and the court is not inclined to guess as to which ones plaintiff is dissatisfied with. Consequently, the second part of plaintiff's motion to compel is denied with respect to the written discovery.

The one question that defendant Sullivan did not answer on advice of counsel had to do with what communications Sullivan had with the beneficiaries of the Ruth Garcia Trust regarding a loan made to the plaintiff and her husband. Plaintiff argues that this evidence is relevant because he believes it will tend to show that Sullivan made unauthorized transfers from the Ruth Garcia Trust. Plaintiff suggest that this evidence would, in turn, be relevant to rebutting the explanation offered by Sullivan in this case as to why he disbursed money from the McCormick Trust.

The specific rule of evidence that the plaintiff relies upon is Rule 406. He claims that the evidence of allegedly making transfers from the Ruth Garcia Trust without authorization is evidence of

habit that would lead the court to conclude he did so with respect to the transfers from the McCormick Trust.

Rule 406 of the Federal Rules allows the introduction of evidence of the habit of a person for the purpose of proving that the person acted in conformity with his habit on a particular occasion.[10] Although not explicitly defined in Rule 406, the term "habit" is generally construed as "a person's regular practice of meeting a particular kind of situation with a specific type of conduct, or as a reflex behavior in a specific set of circumstances."  7 AmJur POF 3d 523 § 1 (citing to Fed. R. Evid. Advisory Committee Notes and Perrin v. Anderson, 784 F.2d 1040, 1046 (10th Cir. 1986)); see also Zubulake v. UBS Warburg L.L.C., 382 F.Supp.2d 536, 541 (S.D.N.Y. 2005); Weil v. Seltzer, 873 F.2d 1453, 1460 (D.C. Cir. 1989); Reyes v. Missouri Pac. R.R. Co., 589 F.2d 791, 795 (5th Cir. 1979).

Although there is no precise formula for determining when conduct is so consistent so as to become "habit, " "adequacy of sampling and uniformity of response are controlling considerations." Williams v. Security Nat. Bank of Sioux City, Iowa, 358 F.Supp.2d 782, 812 (N.D. Iowa 2005) (internal quotations omitted).  Further, when determining whether evidence is admissible under Rule 406, courts may consider the following factors: (1) the degree to which the conduct is reflexive or semi-automatic as opposed to volitional; (2) the specificity or particularity of the conduct; and (3) the regularity or numerosity of the examples of the conduct.'"  United States v. Payton, 59 Fed Appx. 517, 520 (4th Cir. 2003) (quoting United States v. Anguin, 271 F.3d 786, 799 (9th Cir. 2001); see also Zubulake v. UBS

---

[10] Rule 406 provides:

> Evidence of the habit of a person or of the routine practice of an organization, whether corroborated or not and regardless of the presence of eyewitnesses is relevant to prove that the conduct of a person or organization on a particular occasion was in conformity with the habit or routine practice.

Fed. R. Evid. 406.

Warburg L.L.C., 382 F.Supp.2d 536, 541 (citing Reyes v. Missouri Pac. R.R. Co., 589 F.2d 791, 795 (5th Cir. 1979)).

When considering these factors, the court is inclined to agree with Sullivan's assertion that the management of a trust is a volitional activity at least with respect to the conduct at issue in this case. Decisions regarding the disbursement of trust funds may be influenced by specific factual circumstances, including the terms of the trust documents, and requires some reflection as well as the exercise of the trustee's professional judgment. In other words, when making such a distribution or loan, a trustee is arguably required to make a decision upon deliberation as opposed to reacting reflexively. This is significant because the volitional basis of an activity raises serious questions as to the its invariable nature, hence its probative value. See Fed. R. Evid. 406 Advisory Committee Notes; see also Weil v. Seltzer, 873 F.2d 1453, 1460 (D.C. Cir. 1989) (explaining that it is the nonvolitional character of habit evidence that makes it probative).

Further, the making of transfers without authorization from just one other trust, if that is what the evidence would show, is not enough in the court's view to establish the level of frequency and repetitiveness required for the conduct to be considered a "habit."

Finally, the court is not inclined to try two cases of alleged defalcations, which is essentially what would be required to prove up evidence that has limited probative value. Consequently, the court would also exclude the evidence that plaintiff now seeks with respect to the Ruth Garcia Trust on Rule 403 grounds.

Based on the foregoing, the court will not grant the motion to compel with respect to the deposition question in issue. Further, the court would not grant the motion to compel the additional information now requested even if the requests had earlier been made or if the complained-about discovery had been more particularly identified. Finally, the court will grant a protective order to the

extent that Anderson will not be permitted to subpoena any Ruth Garcia Trust records without first receiving prior authorization from the court.

### III.     CONCLUSION

Anderson's Motion to Compel Discovery (Docket No. 72) is **DENIED**.  Sullivan's request for costs and attorney's fees associated with Anderson's Motion to Compel Discovery is **DENIED**.  However, Sullivan's request for a protective order precluding Anderson from subpoenaing or otherwise seeking production of the bookkeeping records of the Ruth Garcia Trust is **GRANTED** to the extent that Anderson may not do so without receiving the prior permission of the court.

**IT IS SO ORDERED.**

Dated this 4th day of May 2006.

/s/ Charles S. Miller, Jr.
Charles S. Miller, Jr.
United States Magistrate Judge