IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NORTH DAKOTA
NORTHWESTERN DIVISION

| | | |
|---|---|---|
| Cheryl J. Anderson, f/n/a Cheryl J. McCormick a/k/a C.J. McCormick, as beneficiary under the C.J. McCormick Trust a/k/a C.J. McCormick Trust, | ) ) ) ) ) | |
| Plaintiff, | ) ) | **ORDER DENYING MOTION FOR SUMMARY JUDGMENT** |
| vs. | ) ) | |
| Gary P. Sullivan and Nancy Sullivan, | ) ) | Case No. 4:04-cv-052 |
| Defendants. | ) | |

**I.      INTRODUCTION**

Defendants filed a motion for summary judgment dated May 1, 2006, and plaintiff filed a response objecting to the motion. The court held a non-evidentiary hearing on June 13, 2006, to consider additional argument. The matter is now ripe for decision.

**II.     DISCUSSION**

   **A.     Request to Dismiss Count One**

In Count One of the complaint, plaintiff alleged that defendants wrongfully made loans of money from the C.J. McCormick Trust ("Trust") to defendant Nancy Sullivan's business, Carvin' Copies. Plaintiff demanded an accounting, repayment of any loaned monies, and imposition of a constructive trust upon the assets of Carvin' Copies.

Defendants argue, and plaintiff is apparently conceding, that only two, five thousand dollar loans were made and that the loans were repaid as to principal. Consequently, the only dispute now

1

is over the amount of interest that should have been paid. There is some evidence that Nancy Sullivan paid ten percent interest on the loans, but plaintiff argues this has not been completely established and, more fundamentally, that plaintiff is entitled to the maximum rate allowable for any type of interest under North Dakota law, which plaintiff argues is 12% under N.D.C.C. § 28-20-34, on account of the allegedly wrongful use of the money

Since this is a diversity action, the first issue that must be addressed is which state law applies, and primarily there appears to be two possibilities. The first is California law because there are facts suggesting the Trust was made there and because over the years most of the money going into the Trust came from two California gas wells. There may also be other facts that would support choosing California law.

Another possible choice may be North Dakota law. This is because, during the time period relevant to most of the challenged conduct, defendants were living in North Dakota and most of the trust administration appears to have taken place here, including the deposit of trust income in North Dakota banks or its investment in North Dakota businesses. Further, plaintiff eventually moved to North Dakota. Moreover, a cursory review of the trust instrument does not reveal an intention that a particular state law will govern.

The parties have not fully addressed the issue of what state law applies, either as to Count One or the other counts. For this reason, and also because of a concern that the court might not have before it all of the necessary facts, the court is reluctant to decide this issue now.

Generally speaking, it is hornbook law that a trustee is liable for wrongfully using trust money and, in that instance, the beneficiary has the option of either seeking damages, including an award of interest, or holding the trustee accountable for any profits earned by the use of the money.

See generally A. Scott & W. Fratcher, The Law of Trusts §§ 205-207 (4th ed. 1988) ("Scott"); G. Bogert, The Law of Trust and Trustees §§ 862-863 (Rev. 2nd ed. 1995) ("Bogert").  However, there is no uniformity among the states as to the appropriate basis for determining what rate of interest should be used or even the fundamental interests to be served in making the determination.  See id.

In some jurisdictions, the primary goal is to place the beneficiary in the position the beneficiary would have been in had the trustee performed his duty. See generally Bogert at § 863. Consequently, in these jurisdictions, the courts look primarily to the earnings on the non-appropriated trust assets for determining an appropriate rate of interest.  But, this may not always be a viable indicator, such as when there are not sufficient other non-appropriated assets, and in these situations other methods for selecting an appropriate proxy must be considered. E.g., Buder v. Fiske, 174 F.2d 260, 274-275 (8th Cir. 1949).

In many other jurisdictions, the courts have considered additional factors, including the degree of culpability of the trustee and a desire to insure that the trustee does not benefit from the use of the money in establishing an appropriate rate.  Consideration of these factors has resulted in courts imposing:

1.   interest at the legal rate, e.g., Barlett and Company, Grain v. Commodity Credit Corporation, 307 F.2d 401, 409 (8th Cir. 1962);

2.   interest at the highest rate allowable by law, see e.g., Langford v. Schamburger, 392 F.2d 939 (5th Cir. 1968) (stating that the court would have been inclined to award interest at the legal rate of 6%, but that case law in Texas was clear that interest had to be awarded at the highest legal rate no matter what the circumstances); St.

>   Germain v. Tuttle, 44 A.2d 137, 142 (Vt. 1945) (only when the breach of trust is intentional);

3.  interest at the market rate for loans of a similar character and security when the trustee has made a loan to himself, Morrison v. Asher, 361 S.W.2d 844, 852 (Mo. Ct. of App. 1962); and/or

4.  compound interest when normally only simple interest would be allowed.

See generally Bogert at § 863; Scott at §§ 207.1 & 207.2.

Also, in many jurisdictions the rule is that the rate of interest should be determined on an equitable basis in each case after considering a number of factors, including the earnings on other trust assets, the degree of culpability of the trustee, and the rates of interest permitted by law. E.g., Chisholm v. House, 183 F.2d 698, 709 (10th Cir. 1950); Matthews v. National Surety Corp. 85 A.2d 534, 536 (N.J.Super.Ct. 1952); Malcolm v. Goodhue County Nat. Bank of Red Wing, 274 N.W. 652, 653-654 (Minn. 1937); see id.

In Hill v. Hanna, 222 N.W. 459, 463 (N.D. 1928), the North Dakota Supreme Court held that it is a fundamental principle that a trustee ought not to intermingle trust moneys with the trustee's own money. The court went on to state that, if the evidence should show that a trustee actually used the intermingled funds, then the trustee should be required to either pay "legal interest" on the moneys used or pay over whatever profit was earned, with the beneficiary having the option of claiming either the profits or the legal interest. However, if the evidence only shows intermingling with no use, then interest need not be paid if the money was available for use, and

there was no duty in the particular case to have invested the money, *i.e.*, there was no violation of prudent-investor rules.[1] Id.

If North Dakota law should be applied in this case, the court believes it must proceed with caution in terms of its consideration of Hill for the following reasons:

- The court did not discuss, or cite any authority for, why it chose the payment of "legal" interest as an option.

- It not clear whether the facts in Hill warranted consideration of other factors, such as the earnings on other trust assets.

- The court did not make clear whether it considered the payment of "legal" interest to be appropriate just for that particular case or whether this should be used in all cases when the beneficiary elects not to claim profits.

- N.D.C.C. § 59-01-10 requires only, as one of its alternatives, that the trustee "pay the value of the use of the trust money" and does not specify how that value must be determined.[2]

- The court did not give any guidance as to what it meant by "legal interest." In other words, it did not specify whether the rate should be the statutory rate when the parties have not agreed upon another rate, the usury rate, or some other rate. Further,

---

[1] A former version of N.D.C.C. § 59-02-08, which set forth the prudent-investor rules for third-party trusts and that was replaced in 1997 by new provisions, permitted the charging of compound interest when a trustee's violation of the prudent-investor rules was more than merely negligent.

[2] N.D.C.C. § 59-01-10 reads as follows:
**59-01-10 Trustee shall not profit by use of property**.
A trustee shall not use or deal with the trust property for the trustee's own profit or for any other purpose not connected with the trust. If the trustee does so, the trustee, at the option of the beneficiary, may be required to account for all profits made thereby, or to pay the value of the use of the trust property, and, if the trustee has disposed thereof, to replace it with its fruits or to account for its proceeds with interest.

since the court's decision in 1928, there have been considerable changes in the statutes that govern the charging of interest in North Dakota.

Assuming for the moment that North Dakota law applies, the court rejects plaintiff's arguments that the highest possible legal rate is the applicable rate and that the appropriate rate in this case is the judgment rate set forth in N.D.C.C. § 28-20-34. There is no support for this argument in what little law there is in North Dakota. Further, this does not appear to be the rule that would be followed in most jurisdictions.

Rather, the court predicts that the North Dakota Supreme Court, when it has the opportunity to more fully consider this matter, will follow those jurisdictions that have held that rate of interest should be decided on a case-by-case basis based upon the equities involved with the ultimate goals being to insure that the beneficiary is fully compensated and, in the more egregious situations, that the trustee is not permitted to benefit from the use of the money. Consequently, if North Dakota law applies, the court concludes that relevant factors for the court's consideration may include: the earnings on the non-appropriated trust assets; the egregiousness of the conduct of the trustee; the market rate for loans of a similar character when the trustee has, in effect, made a loan to himself; and the nominal maximum rate of interest established under North Dakota law for the use of money, which is set by N.D.C.C. § 47-14-09.[3] See id.

---

[3] N.D.C.C. § 47-14-09 establishes the following nominal maximum rate:
five and one-half percent per annum higher than the current cost of money as reflected by the average rate of interest payable on United States treasury bills maturing in six months in effect for North Dakota for the six months immediately preceding the month in which the transaction occurs, as computed and declared on the last day of each month by the state banking commissioner, but that in any event the maximum allowable interest rate ceiling may not be less than seven percent . . . .

However, this section, including the version that was in effect at the time the loans were made in this case, exempts a number of loan transactions the result of which is that there are no maximum legal rate for many loans. The State Banking Commissioner's historical month-by-month determination of the usury rates can presently be found at http://www.state.nd.us/dfi/financial/index.html, and during time period relevant to the two, five thousand dollar loans appears to be slightly in excess of 10%.

In terms of the latter consideration, the court concludes the more appropriate statutory rate is the usury rate set forth in N.D.C.C. § 47-14-09, rather than the legal rate under § 47-14-05, which applies in the absence of an agreement. This is consistent with more recent North Dakota cases that suggest the former applies to the wrongful "use" of money. E.g., T.F. James Company v. Vokoch, 2000 ND 9, ¶¶ 6-9, 604 N.W.2d 459. It is also consistent with the fact that interest, in this situation, "is really damages, computed in terms of interest." Malcolm v. Goodhue County Nat. Bank of Red Wing, 274 N.W. at 653; see N.D.C.C. § 59-01-10 (requiring as an alternative that the trustee pay "the value of the use of the trust property"); see generally Bogert at § 863 ("Where the trustee has deprived the beneficiary of the use of trust property or its proceeds or products, the value of that use may be estimated by charging interest."). And, the more recent North Dakota cases have held that § 47-14-05 does not apply when interest is an element of damages. Hart Honey Co. v. Cudworth, 446 N.W.2d 742, 746-747 (N.D. 1989); St. Paul Structural Steel Co. v. ABI Contracting, Inc., 364 N.W.2d 83, 88 (N.D. 1985) (same); but see Hirschkorn v. Severson, 319 N.W.2d 475 (N.D. 1982); cf. Klitzke v. Klitzke, 308 N.W.2d 385, 390 (N.D. 1982) (holding that § 47-14-05 is not a limitation on the court's authority to impose a higher rate to make an equitable distribution of property in a divorce case as commanded by statute).[4]

Returning to Count One, the court concludes, with some reluctance, that there are material facts in dispute that preclude the granting of summary judgment. This being said, and without

---

[4] Consequently, even if the court viewed Hill as requiring a particular rate of "legal" interest and not permitting the selection of a rate based upon equitable considerations, the court would select the nominal maximum rate set forth N.D.C.C. § 47-14-09 for the same reasons. Further, when the concern is the trustee's improper use of the money, the trustee should not benefit from consideration of the lower rate under § 47-14-05 simply because the parties have not agreed upon a higher rate that otherwise would be permitted by § 47-14-09, nor should the beneficiary be denied full compensation when, for example, money being earned on other trust assets is in excess of the legal rate established under by § 47-14-05.

considering all of the factors that may be applicable, ten percent interest (assuming this was what was paid for the entire period the money was used) may very well be an appropriate rate and, even if not, any difference between that rate and what could be imposed as a matter of law likely is not going to amount to sizeable amount of money in this case given the small size of the loans.

### B.     Request to Dismiss Count Two

Count Two alleges that defendants sold what had been their personal residence in Williston to the Trust and that defendant Gary Sullivan breached his trust responsibilities by doing so at terms that were unfavorable to the Trust. However, it now appears that plaintiff agreed to the purchase price. Further, it appears plaintiff was represented by counsel with respect to at least some aspects of the transaction and that she signed papers that contained the terms of the loan, including the balloon payment.   Finally, there is an indication plaintiff will not suffer any damage given the likelihood the residence has increased in value because of the current oil boom in the region.

At this point, however, the court is not able to state that there are no material fact issues in dispute with respect to Count Two.  However, the court strongly encourages plaintiff's counsel to consult with his client regarding the wisdom of pursuing the merits of this claim.

### C.     Request to Dismiss Count Three

It is undisputed that defendant Gary Sullivan diverted more than $100,000 from the Trust into DIA, his own personal business.  Further, there are substantial disputed facts as to how much was diverted, how much was repaid, the value of certain repayments, and whether or not any interest was repaid.   There are also disputed material facts that would bear upon the issue of whether or not plaintiff may be entitled to claim all or a portion of the gain made by Sullivan on the sale of DIA.

Sullivan claims that plaintiff would not be entitled to any share of the profit from the sale of DIA because Trust funds were not used to actually purchase an ownership interest in DIA. The court has reviewed the cases cited by both counsel and is not convinced this is a limitation on the ability of the court to award a share of profits resulting from an increase in value to DIA. See generally Bogert at § 923. But, this should not be taken as an indication the court has concluded that a sharing of profits can actually be accomplished in this case or is otherwise appropriate.

At this point, the court concludes that there are material issues of disputed fact that prohibit the granting of summary judgment as to Count Three.

### D. Request to Dismiss Count Four

Defendants argue that there can be no liability under N.D.C.C. § 27-13-08 as a matter of law because Gary Sullivan never possessed a North Dakota license to practice law. Defendants cite no authority for this proposition, and the court agrees with plaintiff that this is not dispositive in terms of an ability to recover damages under § 27-13-08.

Defendants also argue that any claim for treble damages is barred by the two-year statute of limitations applying to claims for professional malpractice. However, defendants cites no authority for this proposition other than the statute of limitations that applies to claims for professional negligence.[5]

The court concludes that the two-year professional negligence statute is not the appropriate statute of limitations. N.D.C.C. § 27-13-08 makes criminal the conduct it proscribes in addition to imposing treble damages; hence, the primary purpose of the statute is to punish an offense against

---

[5] Even if the two-year statute for professional negligence claims applies, there appears to be material facts in dispute as to when plaintiff's cause of action accrued for purposes of claiming treble damages.

the public rather than merely redressing a private wrong.  Further, the imposition of treble damages is a penalty because it does more than redress actual damages.

For these reasons, the court concludes the appropriate statute of limitations is the three-year statute contained in N.D.C.C. § 28-01-17(2).  See LaBenz Trucking, Inc. v. Synder, 519 N.W.2d 259, 261-262 (Neb. 1994); Barret v. Holland & Hart, 845 P.2d 714, 719-720 (Mont. 1993); Estate of Riedel v. Life Care Retirement, 505 N.W.2d 83, 82 (Minn.App. 1993); see generally 51 Am.Jur.2d Limitation of Actions § 128.

Finally, defendants argue that plaintiff never acted as an attorney with respect to the challenged transactions; hence, there can be no liability as a matter of law.  The court concludes there are material facts in dispute with respect to this issue that preclude the granting of summary judgment.

### E.     Other arguments raised by defendants

Defendants argue that the court cannot impose a constructive trust on the proceeds from the sale of DIA and cannot grant relief with respect to the out-of-state assets.  The court is reluctant at this point to make definitive rulings on these issues in the absence of having the full factual picture before it.  This being said, and with making any ruling on the merits in terms of entitlement to any particular type of relief, the court tends to agree with the authority cited by plaintiff on these issues.

Defendants further argue that Nancy Sullivan should be dismissed from this case.  However, given the court's ruling with respect to count one, she must remain in this action for purposes of this count.  Further, she must also remain a party because it appears she is a joint owner of property that plaintiff may be able to prove an entitlement to with respect to certain equitable relief.

### III.     CONCLUSION AND ORDER

Based on the foregoing, defendants' motion for summary judgment is **DENIED**.

**IT IS SO ORDERED.**

Dated this 28th day of June, 2006.

/s/ Charles S. Miller, Jr.
Charles S. Miller, Jr.
United States Magistrate Judge
