**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NORTH DAKOTA
NORTHWESTERN DIVISION**

| | | |
|---|---|---|
| Cheryl J. Anderson, f/n/a Cheryl J. McCormick a/k/a C.J. McCormick, as beneficiary under the C.J. McCormick Trust a/k/a C.J. McCormick Equity Trust, | ) ) ) ) ) | |
| Plaintiff, | ) ) | **SUPPLEMENTAL FINDINGS, CONCLUSIONS, AND ORDER FOR ENTRY OF FINAL JUDGMENT** |
| vs. | ) ) | |
| Gary P. Sullivan and Nancy Sullivan, | ) ) | Case No. 4:04-cv-052 |
| Defendants. | ) | |

**I.      Background**

On March 28, 2007, the court issued its initial findings of fact and conclusions of law. The court delayed entry of final judgment to allow the plaintiff to make an election of remedies as to the defendant's Florida condominium and to address the issue of attorney's fees and costs.

On April 12, 2007, plaintiff chose the imposition of an equitable lien for the amount of the money converted by defendant Gary Sullivan rather than an ownership interest in the condominium. On May 2, 2007, the defendants filed objections to the plaintiff's election. Plaintiff also submitted her requests for attorney's fees and costs, which were objected to by the defendants.

On June 26, 2007, the court held a hearing to address the form of relief to be granted the plaintiff and also to address the attorney's fees and costs. In addition, the court allowed the parties an additional opportunity to submit proposed language for an equitable lien.

1

What follows are the court's findings and conclusions on these remaining issues and the order for entry of judgment. Terms defined in the court's earlier findings and conclusions shall have the same meaning when used herein.

## II.     Relief with respect to the Florida condominium

The court concluded in its prior order that the plaintiff was entitled either to an equitable lien in the amount of $122,143.07 as of March 23, 2007, with a daily accrual of interest until the entry of judgment of $16.44 per day, or to a declaration that she possessed a 28% ownership interest in the condominium. The court further held that the interest acquired by the plaintiff under either remedy would be superior to any interests of the defendants, that defendant Nancy Sullivan was not a bona fide purchaser for value, and that Florida's homestead laws were not a bar to either remedy.

Following plaintiff's election choosing the equitable lien with interest, the defendants filed objections attempting to rehash matters that the court had already been decided. Nevertheless, the court will address the defendants' objections since they could be raised in a subsequent motion to alter or amend the judgment and since they have been briefed by the parties.

Nancy Sullivan makes several arguments as to why the court cannot impose a constructive lien in favor of the plaintiff on the Florida condominium. One of the arguments is that the equities do not favor the imposition of a lien. In support of this argument, Nancy Sullivan filed an affidavit claiming that her financial contribution to the condominium was in the area of $160,000 to $175,000, that she would lose much of this investment if a lien was granted, that the defendants need to use the condominium to assist in the care of Gary Sullivan, and that the defendants' financial resources are limited. The court gives no weight to this affidavit for several reasons. First, the affidavit is filed after the fact and has not been tested by discovery and cross-examination. Second,

Nancy Sullivan's claim as to what her financial contribution has been to the condominium since its purchase is irrelevant, at best, since the plaintiff's interest arose at the time of condominium's purchase when the converted trust funds were used to fund the down payment.[1]

Nancy Sullivan also argues that Florida's homestead laws do not allow the imposition of a constructive trust and equitable lien over the Florida condominium. Sullivan cites in particular to the homestead provisions of the Florida Constitution. She argues that Florida's constitutional provisions permit only limited exceptions, none of which are applicable here according to her. She also points to the Florida Supreme Court's decision in Havoco of America, Ltd. v. Hill, 790 So.2d 1018 (Fla. 2001), which she claims liberally construes the constitutional protections.

These points, however, have all been dealt with in the court's prior conclusions. As the court noted earlier, the fact that the converted Trust funds can be traced directly to the purchase of the condominium is sufficient under Florida case law to support the imposition of an equitable lien and trump any claim of homestead protection. E.g., In re Financial Federated Title & Trust, Inc., 273 B.R. 706, 711-717 (Bkrtcy.S.D.Fla. 2001); Palm Beach Savings & Loan Ass'n, F.S.A. v. Fishbein, 619 So.2d 267, 260-270 (Fla. 1993); cf. Havoco of America, Ltd. v. Hill, 790 So.2d 1018 (Fla. 2001) (discussing past equitable lien cases). This is true even if Nancy Sullivan was an innocent spouse. Florida law supports the imposition of an equitable lien that would be superior to her interests for two reasons. First, it prevents her from being unjustly enriched by the amount of Trust funds that

---

[1] While Nancy Sullivan's affidavit is silent as to when she made the claimed financial contributions to the Florida condominium, it is clear from other evidence that a substantial part of the investment claimed was after the purchase of the condominium. The evidence was undisputed that the only two sources of money for the purchase of the Florida condominium were funds converted from the C.J. McCormick Trust and a loan and mortgage taken out by the Sullivans at the time of purchase. Further, Nancy Sullivan claims in her affidavit that part of the money she put into the Florida condominium came from the sale of a California residence. The evidence at trial, however, was that the California residence was sold after the purchase of the Florida condominium and that its proceeds were used to pay off the mortgage initially taken out to partially fund the purchase of the Florida condominium.

3

were used to purchase the condominium. Second, because she did not give value for the amount of the Trust funds that were used in the purchase of the Florida condominium, she was not a bona fide purchaser for value to the extent of the use of the converted Trust funds. See In re Financial Federated Title & Trust, Inc., 273 B.R. at 716-717; Fishbein, 619 So.2d at 270-271.[2]

Moreover, Nancy Sullivan was not a completely innocent spouse. While the court found that she did not participate in the conversion of the Trust funds, the court concluded she should have known of the use of the Trust funds in the purchase of the condominium, *i.e.*, she had constructive knowledge. Consequently, in addition to not having given value for the use of the Trust funds, she was not a bona fide purchaser for this reason as well.[3]

Finally, Nancy Sullivan argues that the liberal construction afforded Florida's constitutional homestead provisions by the Florida Supreme Court's recent decision in Havoco of America, Ltd. v. Hill means that the precedent relied upon in the court's earlier conclusions is not good law. The court disagrees for two reasons. First, the Florida Supreme Court in Havoco did not renounce that court's prior precedent to the extent claimed by Sullivan. Second, the facts presented by this case fall within one of the permitted exceptions to the homestead protection afforded by the Florida Constitution. Article X, § 4 of Florida's Constitution reads, in relevant part, as follows:

> (a) There shall be exempt from forced sale under process of any court, and no judgment, decree or execution shall be a lien thereon, *except for* the payment of taxes and assessments thereon, *obligations contracted for the purchase*, improvement or

---

[2] Florida's law is not unique in this regard. See, e.g., In re Marriage of Allen, 724 P.2d 651, 658-660 (Colo. 1986); Orevaugh v. Kline, 519 P.2d 691, 214 (Kan. 1974); Cross v. Cross, 246 S.W.2d 801, 803 (Mo. 1952); American Ry. Exp. Co. v. Houle, 210 N.W. 889, 890 (Minn. 1926); Clingman v. Hill, 215 P. 1013 (Kan. 1923).

[3] The court concluded that Nancy Sullivan should have known of the more than $80,000 of converted Trust funds that were used to make the down payment on the Florida condominium. Further, the credible evidence was that Nancy Sullivan became aware that Trust money had been used within a very short time after the purchase and prior to her making any of the additional investments in the Florida condominium.

> repair *thereof*, or obligations contracted for house, field or other labor performed on the realty, the following property owned by a natural person . . . .

(emphasis added)

When Gary Sullivan used the Trust funds in the purchase of the condominium, he was acting on behalf of the Trust as a matter of law. This, in turn, created a contemporaneous obligation of repayment to the Trust that falls within the exception under Article X, § 4 for "obligations contracted for the purchase." Or, to put it somewhat differently, the Trust became equitably subrogated to an interest in the condominium to the extent of the Trust funds used in the purchase. Havoco of America, Ltd. v. Hill, 790 So.2d at 1024-28. Contrary to Sullivan's argument, the Florida Supreme Court in Havoco did not overrule the prior Florida Supreme Court decisions that approved the imposition of an equitable lien in these circumstances. Id. (discussing prior cases and noting at p.1028 that the court had "invoked equitable principles to reach beyond the literal language of the exceptions only where funds obtained through fraud or egregious conduct were used to invest in, purchase, or improve the homestead.").

As an alternative to the court denying the plaintiff relief as to the Florida condominium because of the defendants' claim of homestead, Nancy Sullivan requests that the determination of whether their homestead claim applies be deferred to some other court when an attempt is made to enforce the equitable lien. The court disagrees with this suggestion.

From the beginning, plaintiff sought in this action to pursue the converted trust funds that went into the purchase of the Florida condominium. This was her right as a matter of law for reasons articulated in the court's earlier conclusions. Later, after successfully proving that converted Trust funds were used in the purchase of the Florida condominium, plaintiff sought relief granting her either an ownership interest in the condominium or an equitable lien that would be superior to

5

any ownership claim of the defendants. Both of these remedies are inconsistent with any claim of homestead by the defendants.

Based on the authority cited in the court's earlier conclusions, the court held that the plaintiff was entitled to elect between the two remedies she sought. But, before so concluding, the court ruled on the defendants' homestead claims because the relief being sought was inconsistent with any claim of homestead rights and because the defendants themselves raised the issue. The court concluded that the relief requested by the plaintiff was not barred by the defendants' claims of homestead.

Essentially, what the defendants are asking for is the right to have a "second bite at the apple" on the homestead issue at some point in the future when the equitable lien is enforced. Not only would this be inconsistent with relief that the court has determined to be appropriate, there is no good reason to require the plaintiff to have to re-litigate the issue.

Finally, plaintiff states that the defendants have recently moved to Nashville and are now renting out the condominium. Plaintiff contends that the defendants have abandoned any claim of homestead as a consequence. Whether the defendants' recent conduct, if true, amounts to an abandonment of the homestead is something that the court need not decide. The court has ruled that plaintiff is entitled to receive an interest in the Florida condominium that trumps any claim of homestead by the defendants. Consequently, the court need not address whether the defendants have abandoned their homestead.

### III.     Costs and fees in pursuit of converted property

In its prior order, the court held that North Dakota law does not allow the plaintiff to recover her attorney's fees for the claims she asserted, but with one exception. The exception is that

N.D.C.C. § 32-03-23 allows recovery of attorney's fees and costs as a substantive item of damage in conversion actions to the extent the fees and costs are for the "fair compensation for the time and money properly expended in the pursuit of the [converted] property."

On its face, a broad reading of § 32-03-23 would allow for the recovery of virtually all of the reasonable attorney's fees and costs claimed by the plaintiff since these fees and costs were arguably incurred in pursuit of the converted property. The North Dakota Supreme Court in Harwood State Bank v. Charon, 466 N.W.2d 601, 605-606 (N.D. 1991) held, however, that § 32-03-23 should not be read that broadly. The court stated that the legislature, in passing § 32-03-23, did not intend to abrogate the "American Rule" for conversion actions and provide for recovery of litigation expenses generally. Consequently, the court limited application of the statute to the recovery of time spent in pursuit of the converted property.

But, while the North Dakota Supreme Court limited the application of § 32-03-23, the court stated there could be some overlap between time spent in pursuit of converted property and time spent in pursuit of litigation. The court held that attorney's fees incurred in the pursuit of converted property that have a "demonstrable purpose" independent of the litigation can be recovered and then gave some examples. More specifically, the court stated the following:

> Accordingly, courts have distinguished between time spent in pursuit of converted property, and time spent in pursuit of litigation. Time and money spent in an effort to recover converted property have included hauling charges, temporary storage charges and travel expenses incurred while searching for the property. Lothrop v. Golden, 57 P. 394 (Cal.1899). Time spent in pursuit of litigation has included attorney's fees for the preparation of a conversion action, and furthering the criminal prosecution of the converter. Haines v. Parra, supra. It is possible that time and money spent could serve both purposes, and some expenses connected with litigation may be compensated if a purpose related to the recovery of the actual property is demonstrated. Gladstone, supra. For instance, the Gladstone opinion suggests that attorney time spent preparing lists of missing property, inspecting inventories, meeting with the converter, contacting law enforcement officers, and making

7

inquiries regarding courses of action appropriate to recovering the converted property could have a demonstrable purpose independent of litigation. Here, the Bank merely submitted a bill for attorney's fees, and no effort was made to demonstrate a purpose other than the recovery of damages. Consequently, we reverse the award of attorney's fees.

Id.

Obviously, there is no "bright line" between attorney's fees and costs that are incurred for the pursuit of converted property and those that are strictly for litigation purposes. In this case, the court has reviewed plaintiff's claim for attorney's fees and costs and believes that the following amounts have a demonstrable purpose independent of the litigation and may be awarded as fair compensation for the time spent in pursuit of the converted property under § 32-03-23:

Attorney and paralegal expense[4]

| | | |
|---|---|---|
| Neff Eiken & Neff, P.C. | 03/16/04 | $121.50 |
| | 03/23/04 | $121.50 |
| | 03/24/04 | $108.00 |
| | 03/29/04 | $100.00 |
| | 03/30/04 | $75.00 |
| | 04/14/04 | $135.00 |
| | 04/19/04 | $108.00 |
| | 04/23/04 | $27.00 |
| | 06/09/04 | $324.00 |
| | 06/10/04 | $270.00 |
| | 07/15/04 | $135.00 |
| | 07/16/04 | $135.00 |
| | 07/21/04 | $270.00 |
| | 09/27/04 | $90.00 |
| | 09/28/04 | $150.00 |
| | 12/07/04 | $562.00 |
| | 04/14/05 | $262.00 |
| | 04/25/05 | $270.00 |
| | 04/26/05 | $337.50 |
| | 01/16/06 | $1,050.00 |

---

[4] In some cases, the total amount of charges on a particular date was greater than what the court believed was compensable. In those instances, the court made an estimate of the amount recoverable based upon the total amount charged and the description of the work performed.

|  | | |
|---|---|---|
| | 01/19/06 | $412.50 |
| | 01/20/06 | $270.00 |
| | 03/12/06 | $750.00 |
| | 03/27/06 | $75.00 |
| | | $6,159.00 |

Other costs

| | | |
|---|---|---|
| John Suess fees | 4/30/06 | $450.00 |
| | 7/31/06 | $100.00 |
| Contract labor to | | |
| to review checks, etc., | 7/23/06 | $670.50 |
| | 7/15/06 | $400.50 |
| | 6/25/06 | $283.50 |
| | 6/16/06 | $261.00 |
| | 5/28/06 | $216.00 |
| | 5/15/06 | $94.50 |
| | 4/29/06 | $157.50 |
| | | $2,633.50 |

## IV.   Taxable costs

Finally, after considering plaintiff's claim of taxable costs and the defendants' objections, the court concludes that the following costs are taxable under 28 U.S.C. §§ 1821 & 1920:

| | | |
|---|---|---|
| Filing fee | 4/01/04 | $80.00 |
| Certified copies | 4/01/04 | $30.00 |
| Statutory witness fees, | | |
|   per diem, mileage, parking | | |
|     Amer. State Bank | 11/24/04 | $30.00 |
|     Gate City Bank | 11/24/04 | $30.00 |
|     NCC Ray witness | 11/24/04 | $30.00 |
|     Kelly Christopherson | 11/24/04 | $30.00 |
|     Connie Ferrell | 11/24/04 | $30.00 |
|     Connie Kahler | 5/21/06 | $40.00 |
|     Sherry Gorveatte | 5/21/06 | $40.00 |
|     Grant Archer | Trial | $217.00 |
|     John Suess | Trial | $158.92 |
| Deposition transcripts - Sullivan depositions | | $2,008.91 |

        Bank record depositions and copying[5]         $7,943.19
        Total taxable costs         $10,667.02

The costs for private service of process are not taxable under binding Eighth Circuit precedent. Crues v. KFC Corporation, 768 F.2d 230, 234 (8th Cir. 1985); Bunda v. Potter, 2006 WL 266513 *3 (N.D. Iowa 2006) (noting that a good argument can be made for allowing such costs particularly given that the marshal's service no longer serves process for private parties absent exceptional circumstances). Also, absent statutory authority to the contrary, expert fees are limited to the $40 per day witness fee permitted by §§ 1821 & 1960. Arlington Central School Dist. Bd. of Educ. v. Murphy, __ U.S. __, 126 S.Ct. 2455, 2461-62 (2006); Crawford Fitting Company v. J.T. Gibbons, Inc., 482 U.S. 437, 440–445 (1987).[6]

## V.    Calculation of net amount of damage awards

In paragraph 4.5 of the court's earlier conclusions, the court held that plaintiff was entitled to $6,630.49, together with interest at a daily accrual of $0.86 from March 23, 2007, until the entry of judgment, to compensate the plaintiff for the conversion of her share of the DIA sale proceeds that the court did not offset by "repayments" made by Gary Sullivan. The court has also now concluded that the plaintiff is entitled to additional damages for attorney's fees and other costs incurred in pursuit of the converted Trust property pursuant to N.D.C.C. § 32-03-23 in the amount

---

[5] Even if all of the copying and other charges associated with obtaining the financial records were not recoverable under 28 U.S.C. § 1920, the court would assess the costs as part of the amount recoverable under N.D.C.C. § 32-03-23.

[6] There are a few older Eighth Circuit cases that allow for recovery of actual expert fees when the testimony has been crucial to the resolution of the case. Crues v. KFC Corporation, 768 F.2d at 234-235 (citing Nemmers v. city of Dubuque, 764 F.2d 502, 506 (8th Cir. 1985). Occasionally, these cases are still cited as authority for recovery of of actual expert fees even when the expert has not been appointed by the court. Bunda v. Potter, 2006 WL 266513 *9 (N.D. Iowa 2006). However, the these Eighth Circuit cases were decided prirot to Crawford Fitting Company, and it is clear that Crawford Fitting Company rejected the rationale relied upon by the Eighth Circuit to award expert fees in those cases and that they have effectively been overruled. See also C. Wright, A. Miller, & M. Kane Federal Practice and Procedure: Civil 3d § 2678 (1998).

of $8,792.50. As of the date of entry of judgment, the total of these two damage amounts together with interest on the former amount is $15,539.95

From this amount, the court will offset the $9,380.41, which the court has concluded that the Trust still owes Sullivan for un-reimbursed expenses under paragraph 5.2 of the courts earlier conclusions. This leaves a net damage amount of $6,159.54, which is in addition to the amount owed the Trust for the conversion of funds that went toward the purchase of the condominium as detailed in paragraph 4.6.1 of the court's conclusions of $122,143.07, with a daily interest accrual from March 23, 2007, until the time of entry of judgment of $16.44 per day. Also, as noted above, plaintiff is entitled to taxable costs in the amount of $10,667.02.

## V.     Order for entry of final judgment

Pursuant to the foregoing and the court's earlier findings of fact and conclusions of law, the court hereby **ORDERS, ADJUDGES,** and **DECLARES** as follows:

1. Plaintiff Cheryl J. Anderson shall have judgment against defendant Gary Sullivan for the total amount of $141,205.47, together with interest at the federal post-judgment rate from the date of entry of judgment. The judgment amount includes: $124,378.91 of converted Trust funds together with interest that can be traced to the purchase of the Florida Condominium for which additional relief is granted below; $6,159.54 in additional net damages after offset for amounts owed by the C.J. McCormick Equitable Trust to Gary Sullivan; and taxable costs in the amount of $10,667.02.

2. With respect to the Florida condominium owned by the defendants, it is adjudged and declared as follows:

    a.    A total amount of $85,716.40 in funds wrongfully converted from the C.J. McCormick Equity Trust and plaintiff Cheryl J. Anderson, as its sole beneficiary, were used by the defendants in the purchase of their Florida Condominium as more fully described below. Consequently, plaintiff Cheryl J. Anderson acquired an equitable interest in the defendants' Florida Condominium as of the date of its purchase, on or about March 16, 2001, and she is entitled to an equitable lien and a constructive trust to protect that interest.

    b.    Plaintiff Cheryl J. Anderson has an equitable lien in the amount of $124,378.91, plus interest at the federal post-judgment rate from and after the entry of judgment, ("Lien Amount"), over the property located in St. Lucie County, Florida, described as follows:

> Unit 433 of Island Dunes Condominium A, a condominium according to the Declaration of Condominium in O. R. Book 400, Page 2021, and all exhibits and amendments thereof in the public records of St. Lucie County, Florida; together with all appurtenances thereto, including an undivided interest in the common elements of the said Condominium as set forth in the Declaration thereof, together with the exclusive use of Parking Space No. 433 and Liquor Bin No. 433.

(herein the "Florida Condominium").

    c.    Plaintiff's lien interest arose as of the date of the purchase of the condominium on or about March 16, 2001, and is superior to any claim of the defendants, including any claim of homestead.

  d. Gary Sullivan and Nancy Sullivan were not bona fide purchasers for value of the Florida Condominium to the extent of the trust funds used in the purchase of the Florida Condominium.

3. The court hereby imposes a constructive trust over the Florida Condominium in favor of the plaintiff Cheryl J. Anderson in order to ensure and secure payment of the Lien Amount.

4. In order to give effect to the court's judgment and to secure plaintiff's equitable lien and beneficial trust interest in the Florida condominium, the court hereby orders and enjoins defendants Gary Sullivan and Nancy Sullivan as follows:

  a. To execute, file, and record a lien against the real estate compromising the Florida Condominium within twenty days of plaintiff's counsel furnishing defendants' counsel with a lien document that is substantially in the form of Exhibit "A," except for any formalities required to comply with Florida law.

  b. To not sell, transfer title, or otherwise encumber title to the Florida Condominium without first obtaining either plaintiff Cheryl J. Anderson's written consent or this court's permission, so long as the Lien Amount remains unsatisfied.

  c. To provide to Cheryl J. Anderson reasonable assurances that the Florida Condominium is adequately insured against fire, hail, windstorm, flood, hurricane, vandalism and other like perils within fifteen days of any written request reasonably made by Anderson from time-to-time until the Lien Amount is satisfied.

       The execution and recording of the lien document by Gary P. Sullivan and Nancy Sullivan for the purpose of complying with the court's order shall not be construed as a voluntary act that would constitute a waiver of their right to appeal from the court's order and judgment and to obtain any relief consistent with prevailing on appeal.

5. The court retains jurisdiction over the defendants to ensure compliance with the court's order and decree. Further, if the Lien Amount has not been satisfied within twelve (12) months from the date this judgment becomes non-appealable or at any time defendants shall fail to keep the Florida Condominium adequately insured or otherwise fail to comply with the court's order and judgment as to the Florida Condominium, plaintiff may apply to the court for an order requiring the defendants to sell the Florida Condominium to satisfy the Lien Amount.

6. Until the court's judgment becomes non-appealable, plaintiff Cheryl J. Anderson is enjoined from enforcing the equitable lien granted by this judgment and from enforcing the judgment amounts awarded to her as to Gary Sullivan, except as permission may otherwise be granted by the court upon motion.

Dated this 7th day of August, 2007.

                        /s/ Charles S. Miller, Jr.
                        Charles S. Miller, Jr.
                        United States Magistrate Judge